My name is Taran Vithar and I am an attorney for Petitioner Ajit Singh, who is a citizen of India. Your Honour, the main issue in this case is whether the petitioner is credible. Judge and the BIA are in concluding that he is not credible. Adverse credibility is based on his inconsistent testimony. There is no doubt, Your Honour, the petitioner was inconsistent. But those inconsistencies are not material and those inconsistencies do not overcome his otherwise credible testimony. It wasn't so much as inconsistencies as his claim that his brother had been arrested in a group of eight and the newspaper account of the arrest of the group of eight didn't include the name of his brother. I think that's the more serious credibility problem than what you might call minor inconsistencies. It's sort of an inconsistency with outside evidence. That's true, Your Honour. In that record, we asked him a question why his brother's name is not in the list and he said he doesn't know and he said he may have used another name which he's not aware of. That's what he testified. Now, the contention is that the brothers disappeared and never been heard of since. Is that right? That's correct, Your Honour. And, Your Honour, we believe his testimony was consistent with his asylum application. In regard to the important aspects of his claim, for example, like when he was arrested, he was a member of a political group, Akali Dalman, and how he suffered harm in his country and he was arrested and, again, his house was raided and he was not home. So other important aspects of his testimony was consistent to his asylum applications. Did he have any evidence of his membership in this political party? No, Your Honour. Even a letter from somebody else who was in it or from a relative or from Mr. Mann himself? He did not provide us any corroborating evidence in this case. Your Honour, this is a pre-Real ID Act case and I believe his testimony was enough, which he testified in detail and it was sufficient to establish that he was a member of Akali Dalman and we asked him why did he try to get the papers or any proof that he's a member of Akali Dalman. He testified in the court that he tried to get those documents he called a relative and the relative said she's scared and also the relative was uneducated. So she did not have access to those papers. What about the length of time that had passed since he left? Yes, Your Honour, when he had an individual hearing he was in this country almost for 13 years. What's the age of your client now? Your Honour, when he entered that time he was 32 and I believe it's 45, he's 45. I guess it's not his burden, I guess it's the service's burden to show whether he could live somewhere else in India, but what about that? Now you say he speaks only Punjabi, but India is a pretty diverse country. A lot of people speak a lot of languages in a lot of different places. It seems likely that there would be somewhere else he could go where people would speak Punjabi. Yes, Your Honour, in that aspect he testified he does not have any relative out of Punjab and he's uneducated, the only language he speaks is Punjabi and also he said Punjab police can find him anywhere in case they want to arrest him. Your Honour, the country report which was in the record, 2006 country report, page 194 of the certified record and page 196 of the certified record states what's going on throughout the country. What is your client doing in this country? Does he have a job? Yes, Your Honour, he's a cook in an Indian restaurant and where he does not speak any other language, he's working on the back and speaking Punjabi. Working where? In the Indian restaurant. He's a cook, he's working on the back and most of the people working there are Punjabis. And, Your Honour, there was also issue of the country condition in this case and the record in the certified record shows that country condition has not been changed fundamentally in this case, that's all, Your Honour, and I request the court because he testified consistently to his asylum application, so he should be considered credible and because he suffered harm in his country and he should be granted asylum on the humanitarian basis also because he suffered harm. Okay, you wish to reserve the remainder of your time? Yes, Your Honour. Thank you. Let's hear from the government. May it please the court, Tiffany Walters for respondent, the United States Attorney General. The record in this case does not compel the conclusion that Singh testified credibly. In this case we have his testimony directly inconsistent with documentary evidence of record. Singh was unable to explain the inconsistency between his claim that his brother was arrested in this raid and the United Nations Commission on Human Rights report which details the eight individuals who were in fact arrested. Aside from the question of his brother's arrest, were there any other inconsistencies? That's the only inconsistency the board relied on. The immigration judge identified also inconsistencies between his claim that he did not have contact with his family in India and his testimony that he did in fact exchange letters with his wife and was able to receive his son's death certificate. Was he given an opportunity to explain this inconsistency? He was. He was presented with the evidence and the DHS attorney actually read through the list of names and asked Singh to identify which... Was he given any opportunity or was there any other avenue that he had for coming back and correcting this or answering this later on? Because it looks like to me from the transcript he got surprised by this. And so he didn't anticipate that he was going to get sort of trapped by the government's attorney coming in and saying, well, what about this? You haven't seen this. What's your explanation? Sometimes it's a little hard to give an explanation on the fly when you didn't see this one coming. Did he have any opportunity to come in and correct the record or add something to the record? Would he have had to file a motion to reopen? What else could he have done to come back and say, look, I now have an explanation for why... I can show why my brother's name actually is on the list or why the UN report is incorrect and they've got a name on here that shouldn't be on there and my brother's name should have been. I believe the DHS attorney asked if he had any other evidence that he wished to offer and he said no. In addition to that... Again, that's a little bit on the fly. Certainly. But I guess the opportunity that he would have had to present anything that he had would be in his appeal to the board. He could have requested that the case be remanded if he was able to come up with any additional evidence. And that would have been the appropriate opportunity to raise that. And if the board found that it was material to his claim, the board could have remanded in that situation. Or the board could have at least addressed his explanation at that point. But nothing was raised in the brief to the board beyond the explanations that he provided at the hearing. What's the government's explanation for having this case somehow drop into limbo for 12 years? I wish I could provide additional information on that. That happened at the administrative asylum application stage with the INS. So he was, I believe, never interviewed on his asylum application. I really can't explain why there was that delay. I know I've seen that in other cases. It really puts the petitioner at a disadvantage. The doctor has died. The capacity to get corroborating information about anything, you know, has kind of disappeared. So it's not... Certainly that's a concern. And I will say I don't see that as much in more recent cases. I would say as well that the immigration judge and the board did not require any specific type of corroborating evidence. They requested anything that might be available. Although medical evidence in particular, because the doctor died, might be difficult to obtain. His wife certainly, he's certainly in communication with his wife. It certainly would have been possible to at least provide an affidavit from his wife or some type of corroborating evidence, something to come back from the direct inconsistency with the documentary evidence. In this case, we don't have any really coherent explanation for why his testimony is inconsistent with this document. And we don't have any corroborating evidence that would rehabilitate him from this inconsistency. Except for the possibility that there's a problem with the brother. There's nothing to suggest that he wasn't completely forthright. Isn't that right? Well, I believe that inconsistency with the brother is pretty central to his claim. I said let's put the brother aside. Brother aside. If we put that aside, I didn't see anything else which would suggest that he wasn't believable. The immigration judge identified an inconsistency between contact with his family. The board chose not to rely on that. However, given the materiality and the fact that this inconsistency goes to the heart of the claim, the fact that the agency identified this central inconsistency is sufficient to support the adverse credibility finding. Because in order to reverse, the record would have to compel a contrary conclusion. And given the direct inconsistency with documentary evidence from a reliable source. Apparently the brother is disappeared. Isn't that right? According to respondent's testimony. We don't have anything to corroborate that. You aren't relying on the notion that he could relocate someplace else in India. The agency never made a finding as to that. And it would have been the agency's burden to do so. Right. That would have, the burden would have shifted to DHS after he established past persecution. And the immigration judge made an alternative holding on the merits. And assumed that even if he had established past persecution, DHS had met its burden to show that there had been a change in country conditions such that he no longer had a well-founded fear. But did not rule on the issue of internal relocation. Rested on the issue of changed country conditions. Well, what about the changed country conditions? What's your evidence of changed country conditions with regard to Sikhs in Punjab? The evidence is really more in regard to a petitioner's specific political party. And that is that it's a legal political party. That they are, they actually have representatives in their legislature. Well, is it his party? There's two parties with similar names, aren't there? And one has Mon at the end and one doesn't. And his was the one with Mon at the end. Right. Your evidence relates to the other one. Isn't that right? I believe, I believe it relates to his political party. But I could be mistaken on that. I would point you to the record at, or at least I believe that perhaps the State Department report is vague as to the identification of who the party is. The record, relevant portion of the record is 314 to 15. But the record also, the immigration judge also relied on the fact that the record contains no evidence that ordinary party members are being persecuted. There is evidence that the leaders are, had been arrested and detained. But Singh was simply an ordinary party member many years ago. And there's absolutely no indication that he would be targeted based on his participation many years ago. Additionally, as to the holding on humanitarian asylum, the record does not compel the conclusion that he's demonstrated the level of atrocity required to demonstrate eligibility for that form of relief. This court has dealt with other cases involving one month's detention with torture and found that that was not sufficiently severe. And Hannah B. Keisler, Singh's case is similar to that, even assuming you believe it. And he has not established that he would be eligible for humanitarian asylum in the alternative. If there are no further questions, because the record does not compel the conclusion that Singh is eligible for asylum withholding of removal and protection under the Torture Convention, the court should deny the petition for review. Thank you, Ms. Walters. Yes, Your Honor, the main inconsistency is regarding his brother's name. And I personally think there is no other inconsistency in the record. And on the basis of his own political opinion, this case should be granted. And as far as the country condition is concerned. Counsel, your client was given an opportunity to explain the inconsistency while he was on the stand. Yes, Your Honor. And again, I think that as you saw my questioning of the government, I'm just a little concerned that that may have been just a little bit of a gotcha, so a little bit of a surprise to him. But he certainly had an opportunity when he appealed to the board to try and proffer additional information to say here's why either the U.N. report is wrong or my brother's name is actually on the list because he was listed under a different name. But he hasn't come forward with anything to try and explain this. And this is a pretty big finding. I mean, that was a bit of a surprise when he says my brother disappeared and he disappeared on this date and in this incident. And the U.N. report comes back and says here are the people who disappeared  That's true, Your Honor. And for that, Your Honor, he explained that I'm sorry, I thought it was a newspaper report that listed the eight names. The U.N. report addresses the country conditions, or am I wrong? I think it was U.N. reports which has eight people's names and his name was not there. And petitioner testified his name is Jaswinder Singh, but somebody's name Jasbir Singh was there and, Your Honor, he did not explain whether the sources which provide the name to the U.N. gave the right name. Your client, his brother's name was Jaswinder? Jaswinder Singh. Jaswinder. And there wasn't a similar name on the Jasbir Singh is there, Your Honor, yes. But those aren't equivalent names in India, are they? Yes. They are equivalent names? It's pretty close, Your Honor, Jasbir Singh, Jaswinder Singh. And he's a totally uneducated person. He didn't even come to the committee. Okay, I'm sorry, you're saying Jasbir Singh, J-A-S-B-I-R? His brother's name, she testified, is Jaswinder Singh, J-A-S-V-I-N-D-E-R. And the name in the list is Jasbir Singh. I believe it's J-A-S-V-I-R, last name Singh. Okay, but Jasbir Singh also has a second name, which is Khalsa, K-H-A-L-S-A. I'm looking at AR-130. Does that bear any relationship to your client's family? No, Your Honor. I don't know. I can say here Khalsa is not a last name. Khalsa people, it's a Khalistan. It's kind of they're using themselves to show they are related to Khalistan. So it's not a last name. It's a Khalsa. Now, there's a second Jasbir Singh. There are two Jasbir Singhs on page A-130. The other one has a last name of Manawan. Yes, that is last name. But that's not your client's family. That's what he said, no. Okay. But your client didn't say Jasbir Singh is, that sounds like my brother's name. No, Your Honor. He didn't testify to that. And you could have come back to the board and tried to offer that explanation and didn't. Yes, Your Honor. And, Your Honor, he's related to Akali Dal Man Party. And also, recently, the president of the Man Group, which is Simran Singh Man, he has been arrested in 2005, 2006. And that is also in the record page 167, 168, and 169 of certified records which shows how the leader of this party still had problem in India and this party had problem in India. Well, is it the Man Party that is a legal party now and has a member in parliament? Your Honor, at this moment, he's not a member in the parliament. But it's a legal party that's? This is a legal party. They can contest elections. But, again, this party is demanding for Khalistan with peaceful means. That's the only party in India at this moment. The Man Party. That's correct, Your Honor. That's all, Your Honor. Thank you. I thank both counsel for the argument. Ajit Singh v. Holder is submitted.
judges: Wilken, Fletcher B. , Bybee